Miguel HINOJOSA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–276–CR.

Court of Appeals of Texas,
Corpus Christi.

March 10, 1994.

Alfredo Padilla, Brownsville, for appellant.

Luis V. Saenz, Dist. Atty., Douglas McMaster, Asst. Dist. Atty., Brownsville, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and KENNEDY, JJ.

*OPINION*

FEDERICO G. HINOJOSA, Jr., Justice.

A jury convicted Miguel Hinojosa of investing funds to possess marihuana and assessed punishment at 39 years' confinement and a $100,000.00 fine. By his first point of error, appellant complains that the State failed to timely reveal the identity of a confidential informer. By five additional points of error, appellant complains that the court erred 1) by refusing to grant him a continuance because he could not locate the confidential informer, 2) by allowing the jury to view a videotaped conversation and by allowing an uncertified interpreter to translate the

conversation, 3) by refusing to dismiss the case because the State violated the Speedy Trial Act, 4) by allowing the State to amend the indictment over his objection, and 5) by refusing to order an acquittal because he did not possess sufficient marihuana for an aggravated offense. We reverse the judgment of the trial court and remand the case for a new trial.

Brownsville Narcotics Agent Rolando Vasquez posed undercover as a drug seller on July 2, 1991. Vasquez went to Raul Delgado's house with Jesus Delgado, a confidential informer. The informer stayed with Vasquez through all the transactions. Raul told Vasquez that he had some friends who wanted to buy marihuana. Raul and Vasquez discussed some preliminary details and then parted. Raul called Vasquez and asked him to return to his (Raul's) house. When Vasquez arrived at the house, Raul told him that his friends wanted to buy a total of 67 pounds of marihuana. Later that same day, Raul called Vasquez and told him that his friends were at his house and asked Vasquez to come over. By the time Vasquez arrived, however, the buyers had left. Raul then told Vasquez to go to a local store parking lot and that he would take the buyers to him. Vasquez drove to the parking lot and waited.

Raul arrived in a small brown car with two other men. Vasquez got out of his car and walked over to the small brown car. The informer did not accompany Vasquez. Raul introduced the other passenger as Miguel (appellant here). Raul then stated that his friends had brought money for 67 pounds of marihuana. Appellant pulled a bundle of money out of his pocket and told Vasquez that he had enough for seven pounds and that an unidentified friend had the rest of the money. Vasquez told the men to get the remainder of the money.

Appellant subsequently returned in a second car with a different driver. Again, Vasquez got out of his car. The informer remained in the car, 10 to 12 feet away, with the windows rolled up and the engine running. Appellant told Vasquez that the driver, identified only as Juan, was the person with the rest of the money. Vasquez asked to see the money, but Juan refused. Juan

relented when appellant told him to show the money. Juan got out of the car and showed Vasquez a bag in the trunk containing the money. Juan and appellant drove off, believing they were en route to Agent Vasquez's house to close the deal. They were arrested and charged with investing funds to deliver marihuana.

By his sixth point of error, appellant complains that the court erred by refusing to order an acquittal because he did not possess sufficient marihuana for an aggravated offense.

■ The standard of review for the denial of a motion for instructed verdict is the same as that for sufficiency of the evidence. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim. App.1990). We consider all the evidence in the light most favorable to the verdict. *Id.* We must determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the evidence. *Butler v. State,* 769 S.W.2d 234 (Tex.Crim.App.1989).

■ Appellant was charged with knowingly or intentionally investing money which he knew or believed was intended to further the offense of aggravated possession of marihuana. TEX.HEALTH & SAFETY CODE ANN. § 481.-126 (Vernon 1992). The offense charged was aggravated, meaning that the amount involved was greater than 50 pounds. TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 1992). Appellant was charged with acting either alone or as a party, *i.e.,* intending to promote or assist commission of the offense, he solicited, encouraged, directed, aided, or attempted to aid another person to commit the offense.

Appellant contends on appeal that the evidence at most shows that he intended to invest money to possess only seven pounds, an action separate from Juan's intent to possess 60 pounds. He does not recant his testimony 1) that he had borrowed money from a respectable family, 2) that he was en route to discuss the purchase of a welding machine when he accepted a ride from Juan, 3) that he had no intention of buying any marihuana, and 4) that he did not know Juan.

Agent Vasquez testified that *Raul* Delgado, rather than the informer *Jesus* Delgado, originally presented appellant and Juan as a package. Though under cross-examination, Vasquez said Raul had spoken of one friend who wanted to buy seven pounds and another who wanted to buy 60 pounds, under direct examination he testified that appellant showed him money that appellant said was "enough money for at least seven pounds" and that "another friend of his had *the rest* of the money" (emphasis added). Vasquez testified that on appellant's return with Juan, the friend with the money, appellant directed Juan to "go ahead and show me the money, that everything was okay." Vasquez repeatedly responded affirmatively to the prosecutor's questions that appellant had "part" of the money and that Juan had "the rest" of the money.

Viewed in the light most favorable to the verdict, this evidence was sufficient for rational jurors to find appellant guilty with respect to the full 67 pounds. The court correctly denied the motion for instructed verdict. We overrule appellant's sixth point of error.

■ By his fifth point of error, appellant complains that the trial court erred by interlineating the indictment and changing the word "delivery" to "possession."

The original indictment states, in relevant part, that:

MIGUEL HINOJOSA ... did ... intentionally and knowingly finance and invest funds the Defendant knew and believed were intended to further the commission of the offense of AGGRAVATED DELIVERY OF MARIHUANA.

On January 23, 1992, the State filed a motion requesting the trial court to amend the indictment by changing the word "delivery" to "possession." A hearing was held on March 2, 1992, and the trial court orally granted the State's motion to amend the indictment.

Even though the State's motion was orally granted on March 2, 1992, and the trial court signed an order on March 6, 1992, reflecting that decision, the amendment did not occur until March 23, 1992, when the court physically altered the charging instrument. *See*

*Ward v. State,* 829 S.W.2d 787, 793 (Tex. Crim.App.1992). The amendment occurred prior to jury selection and over the defendant's objection. The court then proceeded with *voir dire;* a jury was selected, impaneled and sworn; and the jurors were instructed to return the next day. On March 24, 1992, the jury returned, the indictment was read to the jury by the prosecuting attorney, and the trial continued.

Article 28.10 of the Code of Criminal Procedure governs amendments of indictments and states in relevant part as follows:

**Art. 28.10. Amendment of indictment or information**

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time *before* the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information. (emphasis added.)

(b) A matter of form or substance in an indictment or information may also be amended *after* the trial on the merits commences if the defendant does not object. (emphasis added.)

TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989).

The Court of Criminal Appeals discussed article 28.10 in *Sodipo v. State,* 815 S.W.2d 551 (Tex.Crim.App.1991) (opinion on rehearing). In *Sodipo,* the appellant objected to the State's amendment of the indictment on the day of trial, prior to jury selection. The trial court permitted the amendment, over appellant's objection, and commenced trial on the merits on the same day. The Court of Criminal Appeals, noting that subsection (a) allows an indictment to be amended *before* the date trial on the merits commences and that subsection (b) allows the amendment of an indictment *after* the date trial on the merits commences, stated that neither subsections (a) nor (b) allow an indictment to be amended *on* the date the trial on the merits commences. The court held that the State was not permitted to amend the indictment

"on the date of trial prior to trial on the merits commencing." The court stated:

> If the State were allowed to amend at that time, it would not be subject to the constraints of either Subsection (a) or (b). Thus, a "window-of-opportunity" would be opened where a defendant would have neither the right to a 10 day continuance nor an absolute veto as he would have had had the amendment been earlier or later. Thus, the State would be rewarded by "hiding behind the log" and waiting until the "window" period to move to amend rather than doing so earlier when a defendant would have been entitled to 10 days to respond. We hold that the Legislature did not intend to open such a window.

*Id.* at 556 n. 3.

Since article 28.10(a) applies to amendments made before the date the trial on the merits commences, and article 28.10(b) applies to amendments made after the date the trial on the merits commences, and *Sodipo* applies to amendments made on the date the trial on the merits commences, then the question becomes—when did trial on the merits commence in this case?

We have found no definition for "trial on the merits" as it is used in article 28.10. We have also found no authority stating when "trial on the merits commences" under the statute. When we interpret statutory language, we attempt to further the legislative purpose while staying as true as possible to the plain meaning of the words. *See Ward,* 829 S.W.2d at 790–91.

■ We note that article 36.01 of the Code of Criminal Procedure, which governs the "order of proceeding in trial," requires that a jury first be impaneled. TEX.CODE CRIM. PROC.ANN. art. 36.01 (Vernon Supp.1993). Even though no appellate court has determined when "trial on the merits commences" under art. 28.10, the Court of Criminal Appeals has stated:

> The federal courts of appeals have determined that a trial "commences," under

contemplation of R. 43, "at least" from the time that "the work of impaneling jurors begins," (citation omitted), and this is true regardless of the fact that for purposes of double jeopardy analysis, jeopardy only attaches once the jury has been impaneled and sworn. (citation omitted.)

*Miller v. State,* 692 S.W.2d 88, 91 (Tex.Crim. App.1985); *see also* FED.R.CRIM.P. 43.[1] The federal rule that jeopardy attaches in a jury trial when the jury is impaneled and sworn is an integral part of the constitutional guarantee against double jeopardy and is binding on the states through the Fourteenth Amendment. *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978).

We hold that trial on the merits commences at the time that the jury is impaneled and sworn, *i.e.,* at the same time that jeopardy attaches. In view of *Sodipo,* we hold that the trial court erred by interlineating and amending the indictment on the date of trial prior to trial on the merits commencing.

■ A trial court's error in permitting the State to amend a charging instrument over the defendant's objection on the date of trial prior to commencing trial on the merits is not subject to a harm analysis. *Sodipo,* 815 S.W.2d at 556.

Accordingly, we sustain appellant's fifth point of error. Due to our disposition on that point, it is unnecessary to discuss appellant's remaining points of error. *See* TEX. R.APP.P. 90(a).

We reverse the judgment of the trial court and remand the case for a new trial.

KENNEDY, Justice, dissenting.

I respectfully dissent. Although I concur in the majority's decision that sufficient evidence supported the conviction, I dissent from their holding with regard to point of error five. I would hold that trial on the merits commences with the reading of the indictment to the impaneled, sworn jury.

---

1. Fed.R.Crim.P. 43 states in relevant part as follows:
   (a) **Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, *at every stage of the trial including the*

*impaneling of the jury,* and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. (emphasis added.)

Accordingly, I would not reverse the judgment of the trial court.

Like the majority, I have not found a definition of "trial on the merits" as used in Texas Code of Criminal Procedure article 28.10. Usage in factual discussions in opinions indicates that jury selection is not part of the trial on the merits. *See Joines v. State,* 482 S.W.2d 205 (Tex.Crim.App.1972); [1] *see also Decker v. State,* 717 S.W.2d 903 (Tex.Crim.App.1983).[2,3] This distinction is supported by the structure of the Code of Criminal Procedure. Jury selection and trial before jury are contained in a group of nine chapters called "Trial and its Incidents." Tex.Code Crim.Proc.Ann. Chs. 32–39 (Vernon 1989). Jury selection is governed by Chapter 35, entitled "Formation of the Jury." Tex.Code Crim.Proc.Ann. art. 35.01, *et seq.* (Vernon 1989). The succeeding Chapter 36, entitled "The Trial Before the Jury," begins with a chapter called "Order of proceeding in trial." Tex.Code Crim.Proc.Ann. art. 36.01 (Vernon Supp.1993). That article provides in part as follows:

A jury being impaneled in any criminal action, except as provided by Subsection (b) [addressing order of opening statements] of this article, the cause shall proceed in the following order:

1. The indictment or information shall be read to the jury by the attorney prosecuting.

Tex.Code Crim.Proc.Ann. art. 36.01(a). I would hold that article 36.01 describes the trial on the merits. Trial on the merits commences, therefore, with the reading of the indictment to the impaneled, sworn jury.

My proposed exclusion of jury selection from the definition of "trial on the merits" would neither ignore the concerns expressed in *Sodipo* nor contravene the purpose of

article 28.10 of protecting defendants from surprise amendments to indictments. *See Sodipo,* 815 S.W.2d at 556. I differ from the majority only as to which court activity marks the division between procedure under article 28.10(a) and article 28.10(b).

The divergence between my interpretation and the majority's holding is pronounced where, as here, jury selection is divorced temporally from the Chapter 36 trial on the merits. Under the majority's interpretation, on the day that jury selection begins, the prosecution is locked into pursuing an inaccurate indictment, even though the impaneled, sworn jurors have not heard it and may not hear it for days.[4] I believe that, in such cases, what the jurors don't know can't hurt the defendant; but what the prosecutor knows, and can't change, can impair justice and hurt society. My interpretation would allow the prosecution to amend the indictment up until the day before the impaneled, sworn jurors actually hear the indictment. This greater opportunity to present a correct indictment to the jury carries with it the defendant's ability to request and receive *as of right* up to a ten-day continuance under article 28.10(a). My interpretation preserves the right of the defendant to demand adequate preparation time, but enhances the ability of society to accurately prosecute alleged crimes.

Here, the court amended the indictment on the day of voir dire—the day before the indictment was read to the impaneled, sworn jury. Hinojosa objected to the amendment, but did not request a continuance.

Under my interpretation that the court's amendment occurred on the day before trial on the merits commenced, subsection (a) of article 28.10 would control. Under subsec-

---

1. "The record reflects that on April 19, 1971, the Hon. Frank H. Crain presided over the proceedings, which included hearings on several motions, and the voir dire examination of the veniremen. On April 20, 1971, *trial on the merits commenced,* the Hon. Joe E. Kelly presiding." *Joines,* 482 S.W.2d at 207 (emphasis added).

2. "The jury selection continued, the State and defense made their peremptory challenges, the jury was sworn, and excused for lunch. After lunch but before the trial on the merits com-

menced, there was a hearing in which L.J. Rich, the juror who had been selected, impaneled, and sworn, testified." *Decker,* 717 S.W.2d at 904.

3. The court reporter who prepared the statement of facts in the instant case used separate headings for "voir dire" and "trial on the merits" on the covers of the separate volumes.

4. In making this statement, I assume that, as here, the defendant objects to the amendment.

tion (a), the court was within its power to allow amendment over Hinojosa's objection. Cases in which courts erroneously allowed, over defendants' objection, an amendment on or after the date trial on the merits commenced are governed by subsection (b) and are inapposite. *See Sodipo*, 815 S.W.2d 551; *see also Boutte v. State*, 824 S.W.2d 322 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Since Hinojosa did not request a continuance following the amendment, cases in which timely amendments were allowed, but requested continuances were erroneously denied, are inapposite. *See Beebe v. State*, 811 S.W.2d 604, 606 (Tex.Crim.App.1991). The court did not err in failing to *sua sponte* order a continuance following amendment, because the statute imposes no such duty on the court.

I would overrule point five. I respectfully dissent from my colleagues' decision to the contrary.