**Gwen David WESTFALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–97–151–CR.**

Court of Appeals of Texas, Waco.

March 11, 1998.

Rehearing Overruled April 1, 1998.

Discretionary Review Refused Sept. 16, 1998.

Edgar A. Mason, Dallas, for Appellant.

Patrick C. Batchelor, Crim. Dist. Atty., Corsicana, Jim Vollers, Pros. Atty., Austin, for Appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Gwen David Westfall was charged by information with the misdemeanor offense of cruelty to animals. TEX. PEN.CODE ANN. § 42.09 (Vernon 1994 & Supp.1998). A bench trial was held, and the court returned a verdict of guilty. Punishment was assessed at confinement in jail for 30 days, probated for one year, and a fine of $2,000. *Id.* § 12.21 (Vernon 1994). Westfall complains on appeal that the court erroneously permitted the State to amend the information after both parties had announced ready and he had entered his plea. He urges in his second and third points that an order of acquittal is the appropriate remedy because the evidence introduced at trial is both legally and factually insufficient to support a conviction under the original information. In the alternative, his first point requests a remand. Although we agree that the court erred in allowing the amendment, we find that the evidence introduced at trial is sufficient. Thus, we find no harm from the erroneous amendment and affirm the conviction.

## FACTS

On February 18, 1997, Westfall and the State appeared before the court to proceed with this cause. Pretrial matters were discussed and Westfall waived his right to a jury trial. He also requested a continuance until the following morning. After all pretrial motions were considered, the court asked if Westfall wished to be arraigned. He responded negatively, and the State announced ready. Westfall then entered a plea of not guilty. At that time, trial was recessed until 9:00 a.m. the following morning.

The next morning, before any witnesses were called, the State requested that "the amended information" be taken up on the record. Apparently, the court had granted a motion to amend the information after trial was recessed the previous day. Westfall objected, stating that he was not aware that any such motion had been filed and had not had an opportunity to be heard on the subject. He further complained that an amendment should not be allowed because he had already pled to the information. At that time, he argued, jeopardy attached, and the information could no longer be amended. His objections were overruled, he waived a ten-day delay which the court offered, and trial commenced.

## THE INFORMATION

The information to which Westfall initially pled stated, in pertinent part:

GWEN DAVID WESTFALL, hereinafter called defendant, on or about the 1st day of May, A.D.1996, and anterior to the filing of this Information in the said County of Navarro and State of Texas, did then and there intentionally and knowingly fail unreasonably to provide necessary food and care for cattle in the defendant's custody, pastured in Rice, Texas, by not providing necessary food, water, or care for said cattle, against the peace and dignity of the State.

The amended information deleted the word "water" and replaced "Rice, Texas" with "Navarro County." On appeal, Westfall concedes that the deletion of the term "water" was the abandonment of surplusage and that the court did not err in allowing it to be deleted. *See Eastep v. State,* 941 S.W.2d 130 (Tex.Crim.App.1997). Thus, we examine

only the propriety of the replacement of "Rice, Texas" with "Navarro County."

## WHEN DOES TRIAL COMMENCE?

■ Article 28.10(a) of the Code of Criminal Procedure provides for amending a charging instrument without the defendant's consent. It states:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended *at any time before the date the trial on the merits commences.* On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

TEX.CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon 1989)(emphasis added). The State points out that the predecessor to this article allowed for an amendment prior to the time both parties announced ready for trial, suggesting that the change in the language indicates that announcing ready cannot be interpreted to equate with trial commencing. However it cites no authority for this proposition and, in fact, concedes that there is authority to the contrary. Article 28.10 applies to both jury and bench trials, situations in which different procedures must occur before "trial on the merits commences." Because the legislature was not looking merely to bench trials when this change in the language was made, it cannot be interpreted to necessarily preclude the concept that trial on the merits commences when jeopardy attaches.

Additionally, this question has already been considered by other courts of appeals, although only in the jury trial context and not with regard to bench trials. The San Antonio Court held in *Carpenter v. State* that trial "commences" at the same point that jeopardy attaches. *Carpenter v. State,* 952 S.W.2d 1, 6 (Tex.App.—San Antonio 1997, pet. granted) (*citing Hinojosa v. State,* 875 S.W.2d 339 (Tex.App.—Corpus Christi 1994, no pet.)).

In *Hinojosa v. State,* the court held that it was error to allow the charging instrument to be altered the day trial commenced. *Hinojosa,* 875 S.W.2d at 342. On March 2,

1992, the State's motion to amend the indictment was orally granted. However, it was not until March 23 that the physical alterations were made to the indictment. That was the same day on which the jury was selected, impaneled, and sworn. The jurors were then dismissed and instructed to return the following day. The next day, the indictment was read to the jury, and the trial continued. The question arose as to whether the trial commenced on March 23 or the following day.

■ It is undisputed that jeopardy attaches in a jury trial when the jury is impaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); *Ex parte Preston,* 833 S.W.2d 515, 517 (Tex. Crim.App.1992). Following this authority, the Corpus Christi Court held that trial on the merits commences at the time that the jury is impaneled and sworn, *i.e.,* at the same time that jeopardy attaches. *Hinojosa,* 875 S.W.2d at 342. In reaching this conclusion, the Court relied in part on Article 36.01 of the Code of Criminal Procedure, which governs the order of proceedings. By including the impaneling of the jury in Article 36.01, the legislature has impliedly determined that trial begins with jury impanelment. *See id.;* TEX.CODE CRIM. PROC. ANN. art. 36.01 (Vernon Supp.1998).

Similarly, in *Thornton v. State,* the Fort Worth Court concluded that the defendant's motion to sever joined offenses was untimely because he made his motion after the jury had been sworn, although before reading of the indictment. *Thornton v. State,* 957 S.W.2d 153, 155 (Tex.App.—Fort Worth 1997, no pet. h.). Determining that trial commenced when the jury was impaneled, the court relied in part on *Hinojosa.* But *Thornton* goes further in its determination, stating that the point at which jeopardy attaches should be the point at which trial is considered to commence, because it is at that point that the defendant is "put to trial before the trier of facts." *Id.* at 156 (*citing Ortiz v. State,* 933 S.W.2d 102, 105 (Tex. Crim.App.1996)). We hold that trial commences for Article 28.10 purposes at the point that jeopardy attaches, regardless of whether that trial is to a jury or before the

court. TEX.CODE CRIM. PROC. ANN. art. 28.10(a).

## POINTS OF ERROR

In his first point, Westfall complains that the court erred in allowing the information to be amended. His second and third points urge that the evidence is insufficient to support his conviction under the original information.

PROPRIETY OF THE AMENDMENT

 Westfall's first point alleges that the State was erroneously permitted to amend the information after trial on the merits commenced in violation of Article 28.10(a). For bench trials, jeopardy attaches when both sides have announced ready and the defendant pleads to the charging instrument. *State v. Torres*, 805 S.W.2d 418, 421 (Tex. Crim.App.1991). Because ready announcements were made and Westfall pled to the information on February 18, jeopardy attached at that time, and "trial on the merits commenced." *Thornton*, 957 S.W.2d at 156; *Carpenter*, 952 S.W.2d at 6; *Hinojosa*, 875 S.W.2d at 342. The court erred in allowing the information to be amended after that time. *Id.*

SUFFICIENCY OF THE EVIDENCE

In his second and third points, Westfall urges that the court's error in allowing the information to be amended should result in an acquittal because the evidence is insufficient under the original information. In determining whether such a sufficiency review is appropriate, we look to *Ward v. State*, 829 S.W.2d 787 (Tex.Crim.App.1992).

In *Ward*, the Court of Criminal Appeals addressed the question of whether the amended indictment in a bench trial was effective. Although the State's motion to amend the indictment was granted, the change was not made on the face of the indictment. Holding that "amendment" is the actual alteration of the charging instrument, the Court concluded that the indictment had not actually been amended. *Id.* at 794. The Court then turned to Ward's sufficiency challenge, stating that the "resolution of the sufficiency question turned solely on resolution of the amendment issue." *Id.* at

795. Because the indictment had not been amended, the Court considered the sufficiency of the evidence to support the original indictment, impliedly because this is the indictment to which jeopardy attached, even though all parties thought they had proceeded to trial on the amended one. *Id.* Finding the evidence insufficient, the Court remanded the case with an order of acquittal. *Id.* at 796.

In *McHenry v. State*, the Dallas Court considered whether a sufficiency challenge should be reviewed with regard to the original or the "amended" information. *McHenry v. State*, 823 S.W.2d 667, 670 (Tex.App.—Dallas 1991), *rev'd*, 829 S.W.2d 803 (Tex. Crim.App.1992). McHenry urged that the State proceeded to trial on the original indictment because no written notation or interlineation appeared on the charging instrument as required for an amendment to be effective. *Id.* at 671. Without the guidance of *Ward*, the court held that physically altering the indictment was not necessary. *Id.* However, out of an abundance of caution, the court considered the sufficiency of the evidence under the original indictment and found it to be sufficient. *Id.* at 672. The court likewise found the evidence sufficient under the amended indictment. *Id.*

The Court of Criminal Appeals remanded *McHenry* in a *per curiam* opinion, ordering the court of appeals to consider the question of whether there had been an amendment in light of *Ward*. *McHenry v. State*, 829 S.W.2d 803, 804 (Tex.Crim.App.1992). The Court footnoted its recognition that the appellate court "attempted to address" the sufficiency question but pointed out that "the Court of Appeals did not consider that the application paragraph of the jury charge set forth the allegations contained in the State's 'Motion to Amend Indictment' *not* the allegations in the 'original' indictment." *Id.*

On remand, the Dallas Court again affirmed McHenry's conviction, this time refusing to consider the sufficiency of the evidence with regard to either indictment, instead stating that, because the *charge* authorizes a conviction in a jury trial, the question is one of trial error. *McHenry v. State*, 841 S.W.2d

455, 457 (Tex.App.—Dallas 1992, pet. dism'd). The court stated, "the trial court's failure to physically alter the indictment in a jury trial is trial error, but it does not make the evidence insufficient to support the conviction." *Id.* However, the court did respond to McHenry's argument prior to dismissing it. It stated:

> The original indictment in the cause alleged appellant personally examined and negotiated to purchase a quantity of cocaine. On remand, as he did on original submission, appellant argues that the record shows appellant did not physically examine the cocaine sample. Appellant contends the word "examined" requires proof of actual physical contact with the cocaine sample. He argues that the record shows appellant was standing next to the undercover officer and saw his confederates physically handle the cocaine sample. Appellant then argues that when measured against the allegations in the original indictment, the evidence is insufficient to prove those allegations. We disagree with appellant's premise and his conclusion.

> . . .

> Appellant's premise ignores the basic difference between a bench and jury trial. In the bench trial, there is no jury charge. The court, as the fact finder, must measure the evidence against the indictment. In a jury trial, the charge authorizes a conviction.

*Id.* at 458(citations omitted).

McHenry once again petitioned for review, and the Court of Criminal Appeals granted his request. *McHenry v. State*, 898 S.W.2d 300 (Tex.Crim.App.1995). His petition was initially granted to determine whether (1) the court of appeals erred in holding that a variance between the indictment and the evidence produced at trial was inconsequential because the evidence was sufficient when measured against the application portion of the jury charge, and (2) appellant was at least entitled to a reversal and remand due to trial error. *Id.* The determination of this question would have assisted us with the

predicament we now face. However, the Court dismissed McHenry's petition as improvidently granted. *Id.*

Thus, we find ourselves considering which indictment to judge the sufficiency of the evidence against, the original or the erroneously amended one.[1] The last Dallas *McHenry* decision does not help, because the court specifically distinguished bench trials in making its determination, stating: "In a bench trial, we can measure the evidence against only the indictment because there is no jury charge and verdict.... In a bench trial, the discrepancy between the indictment and the evidence makes the evidence insufficient. The reviewing court must reverse and enter a judgment of acquittal. *See Ward*, 829 S.W.2d at 795." 841 S.W.2d at 457. We now find ourselves in the very predicament which was foretold by Judge Clinton in his concurrence to the dismissal of McHenry's petition for review. 898 S.W.2d at 302. He states:

> Were we to hold (gratuitously) that the court of appeals correctly measured sufficiency against the jury charge, we would then face appellant's contention that we should at least hold the trial court committed trial error in submitting the jury charge in terms of the purportedly amended indictment instead of the indictment as originally drafted. But this contention comes too late. Appellant did not raise it in his original appeal.

> . . .

> Many of the peculiarities of this case arise from the manner of the attempted amendment to the indictment, and the implications of our opinion in *Ward* to questions of how to gauge sufficiency of the evidence and trial error.... The Court is being judicious to wait for a better occasion to discuss the proper measure for sufficiency of evidence.

> . . .

> Because the court of appeals held the evidence was sufficient whether measured against the unamended indictment or the

---

1. Unlike *Ward* and *McHenry*, this charging instrument was physically altered.

jury instruction, appellant is not entitled to an acquittal.

■ Westfall does not attack the sufficiency of the evidence under the amended information, and we do not have a jury charge from which to consider trial error. Therefore we address only the sufficiency of the evidence to support the offense as charged in the original information, *i.e.*, the one to which jeopardy attached.[2] *See Ward,* 829 S.W.2d at 795.

Westfall complains that the evidence · is insufficient to support a finding that the offense was committed in "Rice, Texas" as alleged in the original information. Because he concedes that the other elements of the offense have been sufficiently proved and that the deletion of the term "water" from the information was appropriate, we must determine only whether the evidence is sufficient to support a finding regarding where the offense occurred. Under the original information, we must find the evidence sufficient to support a finding that the offense was committed in "Rice, Texas." Because Westfall argues the standards of review for both legal and factual sufficiency challenges, we will address both, although he prays for only an acquittal.

■ In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App.1996) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)).

Testimony from Tony Gist, Westfall's ranch manager, clarified the whereabouts of the cattle which were the alleged victims of this crime. The exchange was as follows:

Q: With respect to the cattle operations in Navarro County, where were those operations located?

A: Just off 1126 right before you come—there'd be a place, we'd call it Rice, you know, I would. 1126 either way of the interstate, east and west of the interstate.

Q: And the interstate is I–45?

A: Yes, ma'am.

Q: How many pastures did you have to look out for, or was it part of your job to look out for? And, I'm going to say Rice, Texas, but how many pastures are we dealing with?

A: Three pastures.

Q: How many cattle, to the best of your recollection, were on those three pastures?

A: Right at 200 head.

Q: When you say you worked for Mr. Westfall for about eight years, did you work with those particular cows or that herd of cattle for that length of time?

A: No, not completely, because it was like I worked for him for about three years before he got the place in Rice in Navarro County.

. . .

Q: Are you familiar with an investigation that was conducted concerning cattle on those pastures in Rice, Texas?

A: Yes, ma'am.

. . .

Q: And from now on, if it's all right, Tony, when I say the cattle, I'm going to refer to the cows on the pastures in Rice.

A: Yes.

2. The question remains as to whether sufficiency should be considered in a bench trial against the "hypothetically correct jury charge" announced by the Court of Criminal Appeals in *Malik v. State* as the appropriate place from which sufficiency of the evidence should be measured. 953 S.W.2d 234, 240 (Tex.Crim.App.1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* For the time being, we do not presume that this "hypothetically correct jury charge" is applicable in bench trials.

■ The fact that the cattle were located in Rice, Texas was stated in this testimony five times. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that the offense charged was committed in Rice, Texas beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89.

■ In conducting a factual sufficiency review, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). In reviewing the record, we have found no testimony to contradict that detailed above. That being true, we find that a determination that this offense was committed in Rice, Texas is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[3] *Id.* Points two and three are overruled.

HARM

■ In point one, Westfall urges that the error in allowing the amendment should result in a remand. He concedes that this error does not result in automatic reversal, but rather should result in reversal only if we find that he was harmed. *See Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997); *Matchett v. State*, 941 S.W.2d 922, 926–30 (Tex.Crim.App.1996). This is non-constitutional error governed by Rule of Appellate Procedure 44.2(b). *See* TEX.R.APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Fowler v. State*, 958 S.W.2d 853, 865–66 (Tex.App.—Waco 1997, pet. filed). Because we find that the evidence was sufficient to support Westfall's conviction, we find that the error was harmless and disregard it. *See id.* Point one is overruled.

3. If we were to address sufficiency under the erroneously amended information, we would find the evidence legally and factually sufficient to support a finding that the offense was committed in "Navarro County." The testimony relied

CONCLUSION

Having overruled all his points of error, we affirm Westfall's conviction.

**OPINION DENYING REHEARING**

In an opinion issued March 11, 1998, we affirmed Westfall's conviction for misdemeanor cruelty to animals. *See* 10–97–151–CR (Tex.App.—Waco March 11, 1998, no pet. h.). In doing so, we held that the court erred in allowing an amendment to the information after jeopardy had attached, although we determined that such error did not result in harm because we found the error had no more than a slight influence on the verdict.

In his brief, Westfall had argued that an error in allowing the charging instrument to be amended results in automatic reversal under *Eastep v. State*, 941 S.W.2d 130 (Tex. Crim.App.1997). However, our understanding at oral argument was that he conceded the necessity of a harm analysis under *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App. 1997). In a motion for rehearing, counsel for Westfall clarified that he made no such concession, stating that he merely conceded that "*Cain* and *Matchett* seemed to mandate a harmless error test in almost all situations."

In *Eastep*, the Court of Criminal Appeals stated that, "[i]n a clear and unwavering line of cases, we have held that violations of Art. 28.10 are not subject to a harm analysis and no breach of the statute will be tolerated despite the probable effect on the outcome of the trial." *Eastep*, 941 S.W.2d at 135. However, the Court later decided *Cain*, which we read to necessitate a harm analysis. In *Cain*, the Court of Criminal Appeals stated:

> Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis.

upon in determining that the findings are sufficient under the original information would necessarily support findings under the erroneously amended information.

*Cain,* 947 S.W.2d at 264. Thus, we subjected the error to a harm analysis, found no harm, and disregarded the error. *See* TEX.R.APP. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

The motion for rehearing is denied.