Caren D. HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–099–CR.

Court of Appeals of Texas,
Waco.

June 23, 1999.

Robert G. Turner, Turner & Gottlieb, Houston, for appellant.

William C. Bennett, Jr., Criminal District Attorney, Madisonville, Gina M. De-Bottis, Special Prosecution Unit, Huntsville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Caren Harris was charged by indictment with possession of a controlled substance of 400 grams or more with intent to deliver. Harris entered a plea of not guilty before the court and filed a motion to suppress illegally-seized evidence. After hearing the evidence, the court denied the motion to suppress, found Harris guilty, and sentenced him to 20 years' confinement and a fine of $5,000. Harris presents three issues for review. He contends (1) the court erred in overruling his motion to suppress because the evidence was seized during an illegal search and (2) the evidence is legally and factually insufficient to support his conviction. Although we harbor doubts about the manner in which consent to search the vehicle was obtained, we will nonetheless affirm the judgment.

## FACTS

Harris was stopped on Interstate 45 by DPS Trooper Jeffery Pirtle for driving 68 miles per hour in a 65–mile–per–hour zone. Pirtle gave Harris a warning ticket and then asked if Harris was carrying any illegal narcotics, weapons, or large sums of money in the car. Harris said that he was not carrying any of those items. Pirtle then asked if he could "look in the vehicle," and Harris consented. Pirtle did a "pat down" search of Harris and then searched the car. Pirtle testified that Harris got nervous as he searched the car. After Pirtle found $800 on the front seat of the car, he radioed for another officer to assist him. He also radioed for a license-and-criminal-history check on Harris, which revealed that Harris had a prior arrest record which included drug crimes. After receiving this information, Pirtle continued with the search of the car and found that the glove box looked as though it "had been taken out recently." With the help of Trooper Lewis Weaver, Pirtle took the glove compartment out of the dashboard and found what appeared to be cocaine. Harris was then arrested for possession of a controlled substance.

## MOTION TO SUPPRESS

Harris first complains that the court erred in overruling his motion to suppress the evidence seized during the search of his car. He contends that the search was not supported by probable cause and that any consent was the product of an illegal detention.

**STANDARD OF REVIEW**

■ We review a trial court's ruling on a motion to suppress under the standard set forth in *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). In *Guzman,* the Court of Criminal Appeals articulated the standard of review to be used when reviewing determinations such as "reasonable suspicion" and "probable cause" as follows:

[A]s a general rule, the appellate courts ... should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor [citation omitted]. The appellate courts ... should afford the same amount of deference to

trial court rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category.

*Id.* at 88–89. Thus, when the issue to be determined on appeal is whether an officer had probable cause to seize a suspect, "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Id.* at 87. Therefore, although due weight should be given to the inferences drawn by trial judges, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Id.* (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).

■ When seeking the suppression of evidence based on allegations of unlawful search and seizure, the accused bears the burden of rebutting the presumption that the police conduct was proper. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App. 1986). The presumption is rebutted by a showing that the search or seizure occurred without a warrant. *Johnson v. State,* 864 S.W.2d 708, 714 (Tex.App.— Dallas 1993), *affirmed,* 912 S.W.2d 227 (Tex.Crim.App.1995). The burden of proof then shifts to the State. If the State is unable to produce a warrant, it must prove the warrantless search or seizure was reasonable. *Russell,* 717 S.W.2d at 9–10.

■ One of the established exceptions to the warrant and probable cause requirements of the Fourth Amendment is a search conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Byrd v. State,* 835 S.W.2d 223, 226 (Tex.App.—Waco 1992, no pet.). Constitutional proscriptions against warrantless searches and seizures do not come into play when a person gives free and voluntary consent to a search. *See Brimage v. State,* 918 S.W.2d 466, 480 (Tex.Crim.App. 1996) (voluntary consent to warrantless search violates neither the United States or Texas Constitution, nor the laws of Texas).

■ Unlike the United States Constitution, under which prosecutors must prove by a preponderance of the evidence that consent to search was freely given, the Texas Constitution requires that the State prove by clear and convincing evidence that consent to search was freely given. *State v. Ibarra,* 953 S.W.2d 242, 244–45 (Tex.Crim.App.1997). For the consent to be voluntary, it must not be the product of duress or coercion, actual or implied. *Allridge v. State,* 850 S.W.2d 471, 493 (Tex.Crim.App.1991). The burden to show voluntariness is not discharged by showing acquiescence to a claim of lawful authority. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968) (When a peace officer represented that he had a valid search warrant when he did not, consent is not voluntary.).

■ Whether the consent to search was in fact voluntary is to be determined from the totality of the circumstances. *Schneckloth,* 412 U.S. at 227 93 S.Ct. 2041; *Byrd,* 835 S.W.2d at 226. Whether the consenting person was in custody or restrained at the time is a factor to be considered in whether consent was voluntarily given. *See Carpenter v. State,* 952 S.W.2d 1, 4 (Tex.App.—San Antonio 1997), *aff'd,* 979 S.W.2d 633 (Tex.Crim.App.1998). If the record supports a finding by clear and convincing evidence that consent to search was freely and voluntarily given, we will not disturb that finding.

**THE EVIDENCE**

■ Both Pirtle and Weaver testified that Harris gave verbal consent to the search of his car. Harris testified that he did not. The court chose to believe the officers and to disbelieve Harris. *See Guzman,* 955 S.W.2d at 87. We will look at the remainder of the evidence to deter-

mine if the consent was voluntary. Pirtle testified that he stopped Harris for driving three miles over the speed limit. He immediately asked Harris to get out of the car, which he did. Pirtle then gave Harris a warning ticket for speeding. After issuing the warning, Pirtle walked around the car, looking into it from all directions. He returned to Harris' side and asked if he was carrying any illegal narcotics, guns, or large sums of money. Harris answered that he was not. Pirtle then asked for permission to "*look* in the vehicle." Pirtle testified that Harris responded, "Sure, go ahead." Pirtle then did a "pat down" search of Harris "to make sure he had no weapons on him," found nothing, and proceeded to search the car.

Pirtle testified that he looked in the left side of the car, walked around to the right side of the car, opened the door, and began to "observe" the interior. He testified that Harris began acting nervous at this point. Pirtle then leaned down and put his hand on the center of the seat, where he felt a "lump." He discovered approximately $800. Pirtle asked Harris why he did not tell him about the money and, according to Pirtle, Harris said he had forgotten about it. At this point, Pirtle called for backup and also ran a driver's license check and a criminal history check on Harris.

Pirtle testified that two or three minutes after he ran the check, he received information that Harris had a criminal record in Texas and in Mississippi. Pirtle also discovered that the car was not registered to Harris. He testified that Harris told him it was his mother's car. Pirtle then continued to search the car, looking under the hood and in the trunk, but finding nothing. He then returned to the right side of the car. He testified that Harris again acted nervous and started walking toward him at this point, but Pirtle told him to "get back in the ditch," which is where he had been throughout the search of the car. Pirtle testified that he opened the glove box and noticed that some of the screws were "scarred up," missing, and only put in half way.

Pirtle testified that troopers Weaver and Wald arrived at this time and Wald kept an eye on Harris while Weaver and Pirtle continued to search the car. Pirtle testified that Weaver felt something between the glove compartment and the dash, so they removed the glove compartment and discovered a white plastic sack which contained "two kilo sized bricks." Pirtle testified that a white powder was in each one. They then sealed up the packages, put them back where they found them, and called a canine unit. The dog "alerted" to the dashboard where the packages had been replaced. Harris was then arrested.

■  When an individual voluntarily consents to a search, an officer's authority to perform the search is not without limit. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex. Crim.App.1996) (citing *May v. State*, 582 S.W.2d 848, 851 (Tex.Crim.App.1979)). The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *Id.* (citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991)); *Montoya v. State*, 744 S.W.2d 15, 25 (Tex.Crim.App. 1987); *May*, 582 S.W.2d at 851. The standard for measuring the scope of consent is that of "objective" reasonableness—what the typical reasonable person would have understood by the exchange between the officer and the individual. *Id.* (citing *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1803–04).

In *Florida v. Jimeno*, the Supreme Court held the defendant's consent to a police officer's request to "search his car" for narcotics extended to a search of the paper bags in the car which, in fact, contained narcotics. 500 U.S. at 251–53, 111 S.Ct. at 1804. Explicit in the Court's reasoning was the fact that the defendant failed to limit the scope of the officer's search when it was objectively reasonable that a search of the car would include any closed containers within the car in which narcotics might be kept. *Id.*

Harris was given a warning ticket. He was free to leave after receiving the ticket, although he was not told so by Pirtle. Furthermore, Harris was made to stand outside the car while the warning ticket was issued and remained standing outside the car while Pirtle asked about the contents of the car. This is a factor which would indicate to Harris that he was not free to leave. Additionally, consent was obtained because Pirtle asked for it, not because Harris offered.[1] Nevertheless, Harris was not coerced into giving consent. He was not promised anything in return for giving consent to search the car. Pirtle first looked through the windows of the car, then asked if Harris was carrying any illegal drugs, weapons, or large sums of money, and finally asked to look in the car, to which Harris responded "sure, go ahead." A reasonable person would have understood the officer's question to be a request to search his car for those items which he had just asked about.[2] That would entail a thorough search of the car, and not a mere "look" through the windows. Additionally, Pirtle had already walked around the car looking in the windows before he asked Harris about the contents of the vehicle. This further suggests that Harris knew to what he was consenting.

Finally, the record shows that Weaver also asked for consent to search when he arrived at the scene. Harris replied, "Go ahead. I've let this officer search it. Go ahead and search it." Thus, Harris not only confirmed that he had authorized Pirtle to search, but consented to the search of his car a second time before the contraband was found. The facts support the conclusion that consent was freely and vol-

untarily given. *Guzman,* 955 S.W.2d at 87–89. Issue one is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his second and third points, Harris complains that the evidence is legally and factually insufficient to support a finding that he intentionally and knowingly possessed cocaine. He basis his argument on the fact that the car was not registered to him, the drugs were found hidden behind the glove compartment, and no fingerprints were found to link him to the contraband.

*Legal Sufficiency*

In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State,* 975 S.W.2d 621, 624 (Tex.Crim.App.1998); *Lane v. State,* 933 S.W.2d 504, 507 (Tex. Crim.App.1996) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State,* 970 S.W.2d 590, 595 (Tex.App.— Waco 1998, pet. ref'd). The evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 238–40 (Tex.Crim.App.1997).

*Factual Sufficiency*

In conducting a factual-sufficiency review, we examine all of the evidence impartially, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. State,* 958 S.W.2d 404, 410 (Tex.Crim.App.1997); *Clewis v. State,* 922

---

1. Pirtle testified that he asks for consent to search every vehicle that he stops, regardless of any suspicion of illegal activity. In our opinion, this is a questionable practice.

2. It is some evidence of consent if the defendant is warned that he does not have to consent to the search and has the right to refuse. *Allridge,* 850 S.W.2d at 493; *Martinez v. State,*

792 S.W.2d 525, 529 (Tex.App.—Houston [1st Dist.] 1990, no pet.). Also, an argument could be made, although not under these facts, that a request to "look" in the car would mean to look through the windows, not to do a thorough search. The better practice would be to ask for consent to "search" the car.

S.W.2d 126, 129 (Tex.Crim.App.1996). When performing our review, we give due deference to the fact finder's assessment of the weight and credibility of the evidence. *Calhoun v. State*, 951 S.W.2d 803, 810 (Tex.App.—Waco 1997, pet. ref'd). We will find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain*, 958 S.W.2d at 407.

## FACTORS TO ESTABLISH KNOWING POSSESSION

■ To establish knowing possession of a controlled substance, the State must prove not only that the defendant exercised actual care, control, or custody of the controlled substance, but also that he was conscious of his connection with it and knew what it was. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995); *Manning v. State*, 864 S.W.2d 198, 201 (Tex.App.—Waco 1993, pet. ref'd). Mere presence at the scene is not sufficient to establish unlawful possession of a controlled substance, but evidence which affirmatively links the defendant to the controlled substance will suffice to prove that he possessed it knowingly. *McGoldrick v. State*, 682 S.W.2d 573, 578–79 (Tex.Crim. App.1985); *Collins v. State*, 901 S.W.2d 503, 505 (Tex.App.—Waco 1994, pet. ref'd). Consequently, the concept of "affirmative links" has been used to determine the sufficiency of evidence for possession convictions. *See Collins*, 901 S.W.2d at 506; *Brochu v. State*, 927 S.W.2d 745, 751 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). "Affirmative links" is a shorthand expression to identify what must be proven in a prosecution for the possession of illegal drugs. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995). The State must point to specific facts and circumstances surrounding the defendant's possession—other than the mere presence of drugs—which raise a reasonable inference of the accused's knowledge and control of the contraband. *Fields v. State*, 932 S.W.2d 97, 103 (Tex.App.—Tyler 1996, pet. ref'd). The affirmative links between the

defendant and the drugs must establish that the accused's connection with the contraband was more than just "fortuitous." *Brown*, 911 S.W.2d at 747.

■ Courts have enumerated several factors to consider in determining possession. These include:

- ▶ whether the defendant owned the vehicle;
- ▶ whether the defendant had sole access to the vehicle;
- ▶ whether the defendant made furtive gestures toward the contraband;
- ▶ whether the defendant made incriminating statements;
- ▶ whether the defendant was under the influence of the contraband;
- ▶ whether the defendant had possession of other contraband or paraphernalia on his person;
- ▶ whether the defendant had access to the contraband;
- ▶ whether the defendant's fingerprints were on the contraband;
- ▶ whether the contraband was in plain view;
- ▶ whether there was an odor of contraband;
- ▶ how much contraband was recovered;
- ▶ whether the defendant tried to escape; and
- ▶ whether the contraband was located in the trunk or passenger area of the vehicle.

*Hurtado v. State*, 881 S.W.2d 738, 743 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Zertuche v. State*, 774 S.W.2d 697, 700 (Tex.App.—Corpus Christi 1989, pet. ref'd); *see also Collins*, 901 S.W.2d at 506. The number of factors present is less important than the logical force of those factors, alone or in combination, in establishing the elements of the offense. *Collins*, 901 S.W.2d at 506 (quoting *Martinets v. State*, 884 S.W.2d 185, 188 (Tex.App.— Austin 1994, no pet.)).

## APPLICATION

To determine legal sufficiency, we consider the evidence in the light most favorable to the verdict. *Westfall,* 970 S.W.2d at 595. Although he did not own the car, Harris was the sole occupant and the car was registered to his mother. He acted "nervous" and tried to approach the car when the officers began to search near the area where the drugs were hidden. Although he initially denied having any money, $800 in cash was found hidden on the front seat of the car. When asked about it, Harris said that he "forgot about it." Over 400 grams of cocaine was hidden behind the glove box in the dashboard. The logical force of these factors establishes the elements of the offense. *Id.* This is sufficient evidence to find that Harris exercised care, custody, control, and management over the contraband and that Harris knew he was in possession of contraband. We find the evidence legally sufficient to support the finding of guilt. Issue two is overruled.

We turn to the factual sufficiency complaint, taking all the evidence into consideration without the prism of "in the light most favorable to the verdict." *Clewis,* 922 S.W.2d at 129. Harris produced evidence that other people would occasionally drive his mother's car and that on the day prior to his arrest the car had been left at a paint and body shop. Harris testified that the money found in the car was intended to purchase clothes for his children. There is no evidence that Harris made incriminating statements, was under the influence of drugs, or possessed other contraband on his person. There were no fingerprints on the contraband, and it was not in plain view. Nevertheless, comparing the verdict to the record, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Issue three is overruled.

Having overruled all Harris' issues, we affirm the judgment.

·TOM GRAY, Justice, concurring.

I concur in the foregoing opinion. I write separately to express my opinion about the manner in which consent to search the vehicle was obtained. Unless the appellant is able to establish a violation of a constitutional right, or until prohibited by statute, I have no doubts about the legality of an officer requesting to search every vehicle he has otherwise legally stopped.