Shirl Smith v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-373-CR

     SHIRL SMITH,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 23,732-CR
                                                                                                                

O P I N I O N
                                                                                                                

      Shirl Smith was convicted of securing execution of a document by deception. Tex. Pen.
Code Ann. § 32.46 (Vernon Supp. 1999). The jury assessed punishment at 180 days in jail and
a fine of $7,000. She asserts two issues for review on appeal. Finding the evidence both legally
and factually sufficient to support the verdict, and finding no preservation of an ineffective
assistance of counsel claim, we will affirm the judgment.
FACTS
      Shirl Smith was accused of causing an employee of the Texas Department of Human Services
(TDHS) to sign and execute a document used to process food-stamp benefits by falsely stating that
her employed husband was not living in her household. The issue in the case revolves around
whether Raymond Smith, Shirl’s husband, was living in the same home as she and her children
at a time when he was employed and she was receiving food-stamp benefits.
The Evidence
      Shirl lived at 2000 North Kaufman, apartment number 231, in Ennis, Texas. Raymond was
employed by Oakwood Homes in Ennis. His employer, Frank Quintilla, testified that, at the time
that Raymond was hired in August of 1997, he listed the apartment on North Kaufman as his
home. Raymond applied for employment benefits for Shirl and six children, indicating that they
all resided at the same address. Records showed that Raymond worked at Oakwood Homes from
August of 1997 through the date of trial. Raymond never indicated any change of address nor any
change in his designation of dependents. 
      Louis Eisenwine, an investigator with the Inspector General’s Office of TDHS, testified that
he conducted an investigation into the Smiths’ living arrangements after being notified by TDHS
that such an investigation was warranted. Eisenwine testified that school records signed by Shirl
indicated that Raymond lived at the apartment on North Kaufman with Shirl and the children
during the time period in question. Eisenwine also testified that he verified Raymond’s
employment and wages and determined that Shirl was not entitled to any benefits if Raymond was
a member of her household. 
      Loretta Davis is the manager of the apartment complex on North Kaufman. Davis testified
that she believed Raymond lived with Shirl, although he had been taken off the lease on September
1, 1997. Davis testified that she believed this was done to avoid reporting Raymond’s income. 
Davis said that she conducted inspections of the apartment after September 1, 1997, and found that
Raymond was still living there. Davis testified that Raymond was put back on the lease in March
or April of 1998.
      Barbara Heath, an employee of TDHS, testified that Shirl applied for benefits on November
4, 1997. She testified that Shirl’s application reported her household to include only herself and
three children and stated that no one in her household was gainfully employed. Shirl received
benefits for August of 1997 through January of 1998.


 Heath testified that she told Shirl to notify
the department within ten days of any changes in her household situation.
      Diane Little, an employee of TDHS, testified that she interviewed Shirl in January of 1998. 
At that time, Shirl told Little that she had private health insurance for herself and her children
through her husband’s employment. Little testified that it was her belief that stepchildren (as these
were to Raymond) would be covered by his insurance only if he lived in the home with the
children. Concerned that Raymond was living in the home with Shirl, Little called the landlord
and was told that Raymond was living in the apartment with Shirl and the children, although he
had been taken off the lease. Little testified the landlord told her that Shirl’s rent was zero dollars,
based on earnings, and that the rent would have increased if she had reported an employed
husband living with her. Little sent a request to Shirl for verification of income. When Shirl
called, Little referred her to her supervisor, but Shirl never called the supervisor.
      Ollie Griffin, Shirl’s ex-husband, testified that he gave a statement to Ericka Thomas, an
investigator with TDHS. He stated that he had signed the statement without reading it, although
he can read. In the statement, Griffin indicted a belief that Raymond resided with Shirl throughout
the period of time in question, although Griffin testified that he told Thomas that he was not sure
whether Raymond lived at the residence or not. 
      Thomas testified that she told Griffin to read over the statement and make any changes before
signing it. 
      Shirl testified on her own behalf. She married Raymond in 1992, but that she moved out of
their apartment in the summer of 1997 when Raymond was not working. She said that Raymond
got a job while they were separated, that she returned to the apartment, and demanded that he
move out. She testified that they got back together in January of 1998. According to Shirl, she
stopped getting food stamps and put Raymond back on the lease when he returned to their
apartment. Shirl maintained that she never lied about whether Raymond was living with her. 
      Raymond testified that he and Shirl separated in 1997 because he refused to get a job. He
stated that he moved back to the apartment in January after staying in his car, at the Outreach
Center, and with his sister, who lives in the same apartment complex as Shirl. Raymond testified
that he could have been seen at the apartment complex during the time he was not living there
because he often visited his cousin, his sister, and his uncle, all of whom live there. 
      Taronna Haynes, Shirl’s neighbor, testified that the Smiths separated in the fall of 1997. She
stated that she saw Raymond around the complex visiting friends and relatives, but that he was not
living there at Thanksgiving or Christmas of 1997.
      Rufus Gatt, pastor of Shirl’s church, testified that he provided marriage counseling for the
Smiths. Gatt stated that he knew the couple were separated during 1997 because Raymond moved
his clothes to a shelter associated with the church, but he did not know where Raymond slept most
of the nights they were separated.
      Leroy Jones, the director of the shelter, testified that Raymond stayed at the shelter during
the latter part of 1997 only two nights. Jones testified that he did not know where Raymond
stayed when he was not at the shelter. 
      Sylvester Clark, Raymond’s uncle, testified that he worked as head of maintenance at the
apartment complex. He testified that he did not see Raymond around the apartments during the
latter part of 1997, and that when he asked why Raymond had not been around, Shirl told him that
they were separated. Clark further testified that Davis, the apartment manager, could not know
whether Raymond lived with Shirl because Davis never left her office. 
SUFFICIENCY OF THE EVIDENCE
      In her first issue, Shirl complains that the evidence is legally and factually insufficient to
support a finding that she intentionally defrauded TDHS by falsely stating that her employed
husband was not living in her household. She asserts that the evidence is clear that Raymond was
not living with her during the time in question.
Legal Sufficiency
      In determining whether the evidence is legally sufficient to support the verdict, we view the
evidence in the light most favorable to the verdict, asking whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Weightman v. State,
975 S.W.2d 621, 624 (Tex. Crim. App. 1998); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim.
App. 1996) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61
L.Ed.2d 560 (1979)); Westfall v. State, 970 S.W.2d 590, 595 (Tex. App.—Waco 1998, pet.
ref’d). The evidence is measured by the elements of the offense as defined by a hypothetically
correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 238-40 (Tex. Crim. App.
1997). 
      The evidence, as set forth above, shows that Raymond became employed in August of 1997,
and was removed from the apartment lease on September 1. Davis, the manager of the complex,
believed Raymond continued to live with Shirl because she saw him there on multiple occasions
while conducting inspections of the complex. A statement given by Shirl’s ex-husband, Griffin,
was offered into evidence in which Griffin stated that he believed Raymond lived with Shirl during
the time in question. Raymond’s employer testified that Raymond provided Shirl’s address as his
own when he was hired and that he never provided any change of address. He also testified that
Shirl and her children were covered by Raymond’s insurance. Reviewing the evidence in the light
most favorable to the verdict, we find the evidence to be sufficient for a rational jury to find the
elements of the crime beyond a reasonable doubt. Westfall, 970 S.W.2d at 595.
Factual Sufficiency
      In conducting a factual-sufficiency review, we examine all of the evidence impartially, and
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). When performing our review, we give
due deference to the fact finder’s assessment of the weight and credibility of the evidence. 
Calhoun v. State, 951 S.W.2d 803, 810 (Tex. App.—Waco 1997, pet. ref’d). We will find the
evidence factually insufficient only where necessary to prevent manifest injustice. Cain, 958
S.W.2d at 407.
      Reviewing the evidence without the prism of “in the light most favorable to the verdict,” we
find conflicting evidence. Griffin changed his testimony at trial, stating that he was not really sure
whether Raymond lived with Shirl even though he had told the investigator that he believed they
were living together. Multiple witnesses testified that Raymond could be seen visiting friends and
family at the complex and that he did not live with Shirl during the time in question. Raymond
testified that he lived at a shelter, although the evidence revealed that he stayed at the shelter only
two nights. Raymond also testified that he lived with his sister for a period of time, and that he
lived in his car part of the time. Shirl testified that Raymond was not living with her at the time
in question, but that she did not know where he was living. The jury could have chosen to
disbelieve these witnesses. Comparing the verdict to the record, we cannot say that the verdict
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Clewis, 922 S.W.2d at 129. 
      Issue one is overruled.
INEFFECTIVE ASSISTANCE OF COUNSEL
      Shirl raises an ineffective assistance of counsel claim in her second issue. She failed to raise
this claim in a motion for new trial or to bring it to the trial court’s attention in any manner.


 
Claims not presented to the trial court are not preserved for our review. Gonzalez v. State, No.
98-268-CR, slip op. at 8, n.3 (Tex. App.—Waco June 9, 1999, no pet. h.). Thus, issue two is
overruled.
      The judgment is affirmed.

                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed June 23, 1999
Do not publish