Carlos Antonio **VILLARREAL** and Janeen Marie Villarreal, Appellants,

v.

The **STATE** of Texas, Appellee.

Nos. 13–92–502–CR, 13–92–503–CR.

Court of Appeals of Texas, Corpus Christi.

Sept. 15, 1993.

Randell Friebele, Harlingen, for appellants.

Luis Saenz, John Olson, Cameron County Dist. Attorney's Office, Brownville, for appellee.

Before KENNEDY, SEERDEN, and FEDERICO G. HINOJOSA, Jr., JJ.

### OPINION

KENNEDY, Justice.

A jury found Carlos and Janeen Villarreal guilty of possession of cocaine. The court sentenced each of them to eight years' confinement. The court probated the confinement for eight years and assessed a $500 fine against each. The Villarreals appeal by five points of error. We reverse and acquit.

Acting on a tip from a confidential informant that Carlos Villarreal and Phillip Castaneda were selling cocaine from Villarreal's home, the Cameron County Drug Task Force ("agency") began periodic surveillance on the Villarreal home. They witnessed different persons stopping by the home for approximately five minutes, a common pattern for houses in which drugs are sold. The agency got a search warrant for the home.

On November 5, 1991, Carlos came home from work at about 10:00 p.m. While he was in the shower, Castaneda and Mike Mayorga arrived. Castaneda was an occasional overnight guest of the Villarreals. Castaneda went into a bedroom to put on one of Janeen's sweaters. Janeen stayed in the living room watching television and dozing lightly. Carlos and Mayorga went outside to look at Mayorga's car.

The agents arrived at the Villarreals' home. They talked briefly with Carlos and Mayorga and told them of their intent to search the house. The agents knocked on the door. They heard feet shuffling and an indecipherable female voice yelling in the house for 40–60 seconds before Janeen answered the door. They entered the house and went to the locked door of the guest bedroom. They heard the sound of a toilet flushing behind that door. Just as they were about to knock the door down, Castaneda opened the door. The agents entered the room and found a baggie of marijuana, marijuana residue, and a baggie of cocaine in the toilet. They also found scattered around the bedroom numerous small baggies containing what appeared to be cocaine residue. They also found a scale, a package of rolling pa-

pers, and a single-edged razor blade. In the Villarreals' bedroom, the agents found two bongs (homemade devices used to smoke marijuana), roach buds (marijuana cigarette butts), and a bowl of single-edged razor blades.

The Villarreals said they rarely entered the guest bedroom, and denied seeing the scales or the baggies found in the guest bedroom. Carlos admitted smoking marijuana, but both Villarreals denied knowing anything about the cocaine. Though an agent testified that single-edged razor blades are preferred to divide cocaine, Carlos testified that he used them to scrape auction numbers off cars at his car lot and that he kept them around for general utility purposes. Janeen said people stopped by the house briefly seeking car parts from Carlos. She was the only woman in the house at the time.

The court denied the Villarreals' motion for directed verdict at the close of the State's evidence and their motion for new trial.

By point of error five, the Villarreals challenge the sufficiency of the evidence to support their conviction for possession of cocaine. In reviewing a sufficiency challenge, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). As this trial occurred well after *Geesa v. State*, we do not use the reasonable hypothesis analytical construct to examine the circumstantial evidence tying Villarreals to the cocaine. 820 S.W.2d 154, 163–165 (Tex.Crim.App.1991). We apply a pure *Jackson* analysis. *Geesa*, 820 S.W.2d at 155–162. The jury, as the factfinder, is the exclusive judge of credibility, weight, and balance of testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim.App.1981). The jury may accept or reject all or part of any witness's testimony. *Id.*

■ We measure the sufficiency of the evidence against the indictment as incorporated into the jury charge. *Benson v. State*, 661 S.W.2d 708, 715 (Tex.Crim.App.1982) (opinion on rehearing). The court charged the jury on possession and on the law of parties. The court charged the jury that it could find that the Villarreals possessed cocaine if they had actual care, custody, control, or management of the drug, knowing that they possessed it and knowing what it was. The court charged the jury that it could find the Villarreals guilty as parties to possession if, acting with intent to promote or assist the possession, they solicited, encouraged, directed, aided, or attempted to aid the actual possessor.

■ To show possession, the evidence must affirmatively link the defendant to the contraband by showing the indicia of possession set out in the charge. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985); *Garza Gonzalez v. State*, 783 S.W.2d 774, 776 (Tex.App.—Corpus Christi 1990, no pet.).[1] The possession need not be exclusive, but the evidence must link the defendant to the drugs. *McGoldrick*, 682 S.W.2d at 578. More facts than mere presence near drugs is required, particularly when there are many people present or in possession of premises. *Estrada v. State*, 643 S.W.2d 753, 756 (Tex. Crim.App.1982). The Court of Criminal Appeals found the evidence insufficient to convict for possession a woman who sat in the living room of a house as her husband was apprehended while disposing of heroin in a kitchen sink; heroin was found only in the kitchen and her methadone treatment program urine tests showed that she was not using heroin. *Harrison v. State*, 555 S.W.2d 736, 737–38 (Tex.Crim.App.1977). Factors that courts have considered include 1) the defendant's presence when the search warrant was executed; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the accessibility of the narcotic; 4) whether the defendant was under the influence of narcotics when arrested; 5)

1. The case law governing review of possession convictions is rife with references to the pre-*Geesa* reasonable hypothesis standard. Though that standard is no longer applicable, the requirement of affirmative links persists in possession cases. We merely review the sufficiency of the evidence of those links under the pure *Jackson* standard.

whether the defendant possessed other contraband when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of the contraband; 10) whether other contraband or drug paraphernalia was present; 11) whether defendant owned or had the right to possess the place where the drugs were found; and 12) whether the place the drugs were found was enclosed. *Chavez v. State*, 769 S.W.2d 284, 288–89 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd).

 Carlos was outside the house when the warrant was executed. Castaneda had the drugs in the guest bedroom behind the keyless door, locked from the inside. Once the door was open, the scales and some of the baggies were in plain view, but the door was shut and locked when the agents entered the house. There was no testimony that Carlos was under the influence of narcotics, made any incriminating statement, attempted to flee, made furtive gestures, or possessed any contraband on his person. He admitted to smoking marijuana. He testified that he used the single-edged razor blades for various purposes; though the agents testified that such blades were commonly employed in cocaine dealing and usage and not in marijuana dealing in usage, the blades were not tested for cocaine residue and there was no testimony that any was visible.

The confidential informant said that Carlos was selling cocaine, but did not say that Janeen was dealing. Janeen testified that she was in the living room watching television, but an agent testified that he saw Janeen coming down the hallway from the back bedroom area; she testified that the layout of the living room may have made it appear that she came down the hallway. There was no testimony that Janeen was under the influence of narcotics, made any incriminating statement, attempted to flee, made furtive gestures, or possessed any contraband on her person. She testified that she did not use cocaine. Carlos backed up this testimony and added that she did not smoke marijuana either.

Viewing the evidence most favorably to the verdict, the evidence indicating cocaine possession by either Villarreal is insufficient. The only evidence providing anything resembling a link between either Villarreal and the cocaine is the informant's tip that Carlos was selling cocaine. That testimony does not show that Carlos possessed cocaine on this occasion. The informant made no mention of Janeen selling cocaine. Janeen was in the house, and may have come from the direction of the guest bedroom while shouting. Carlos admitted using marijuana and owning several razor blades of a type used by cocaine users and dealers. No testimony tied the razor blades specifically to the cocaine. This evidence is insufficient to show either possession by the Villarreals or the necessary assistance of possession to support a conviction under the law of parties.

We find the evidence insufficient to support the verdict and sustain point five. We reverse and acquit.