Collins-LD v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-119-CR

     LEONARD DON COLLINS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the Criminal District Court No. 5
Dallas County, Texas
Trial Court # F94-00396-L
                                                                                                    

O P I N I O N
                                                                                                    

      Leonard Don Collins was indicted for possession of cocaine, less than twenty-eight grams,
with intent to deliver. See Tex. Health & Safety Code Ann. §§ 481.102, 481.112 (Vernon
1992 & Supp. 1995). The court convicted him of the lesser offense of possession of cocaine. See
id. § 481.115 (Vernon Supp. 1995). Collins pleaded true to an enhancement paragraph, and the
court sentenced him to sixteen years in prison. His sole point is that the evidence is insufficient
to support the conviction. We will reverse the judgment.
Factual Background
      On September 23, 1993, Dallas police officers executed a search warrant for a three-bedroom
house at 1359 Neptune. Joseph Maines, an tactical division officer, testified that when he entered
the house he observed Collins in the hallway. Maines "drove him" back into one of the bedrooms. 
In that bedroom, Maines observed another man lying in bed—Collins's brother, John Alvin
Collins. Maines stated that drug paraphernalia was in plain sight in the bedroom. Although
Maines testimony initially indicated that he first observed Collins coming out of the bedroom
where the narcotics were found, he later clarified his testimony by stating that he had not actually
seen Collins come out of any particular bedroom.
      Matthew Mayfield, a narcotics officer with the Dallas Police Department, testified that he
searched the bedroom where John Alvin was found lying in bed. The room contained a bed and
nightstand. Cocaine and heroin capsules were scattered across the bed and floor. He testified
that, if one were to stand in the bedroom, the drugs could be seen. A syringe and spoon with
unidentified residue were on the nightstand. Inside the nightstand, Mayfield found:
      •     a driver's license for John Alvin Collins, which had expired in 1986, listing 1359
Neptune as his address;
      •    a letter sent to the Neptune address from the Department of Human Services addressed
to John D. Collins, an older brother of John Alvin and Leonard Collins; 
      •    a year-old termination notice from the electric company addressed to Leonard Collins at
1359 Neptune; and
      •    a "rental form" dated May 1, 1992, signed by Leonard Collins, in which he states that
he had lived at the Neptune address for twenty-nine years


. 
      David Potts, another narcotics officer with the Dallas Police Department, testified that sixteen
capsules of cocaine and fifty capsules of heroin were found in the bedroom. According to Potts,
the narcotics were scattered around the room as if someone had taken the capsules and thrown
them into the air. Potts testified that all of the drugs found during the search were in the bedroom
where John Alvin was found; however, drug paraphernalia was "all over" the house. Potts stated
that someone in the hallway would not necessarily be able to see the capsules in the bedroom. He
also testified that the search warrant described an individual, later identified as John Alvin, who
had made an earlier "controlled buy." A .38 caliber pistol was found under the mattress in the
bedroom.
      John Alvin testified for the defense. He stated that he had lived at the Neptune address since
1991, that his brother John D. used 1359 Neptune as his mailing address but did not live there,
that one of his sisters had lived at the house but had died two days before the search, and that
Leonard was living "off and on" at the house. He testified that his mother had owned the house
and, at her death, had left it to his sister. He stated that the electric bill was in Leonard's name
because he was the only sibling who had sufficient credit history, that he (John Alvin) had been
a drug addict for thirty years, that the drugs found were his personal drugs, and that Leonard knew
nothing of the drugs. According to John Alvin, Leonard has a "mental problem"—possibly
paranoid schizophrenia. 
Sufficiency of the Evidence
      In reviewing a claim of insufficient evidence, the reviewing court must determine whether,
after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Matson v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991). Review under the Jackson standard is the same
whether the factfinder is the judge or a jury. Matson, 819 S.W.2d at 843. In a trial before the
court, the judge is the sole judge of the credibility of the witnesses and may accept or reject all or
any part of the testimony given by any State or defense witness. Johnson v. State, 571 S.W.2d
170, 173 (Tex. Crim. App. [Panel Op.] 1978).
      A defendant must exercise care, custody, control, and management over illicit drugs, knowing
them to be drugs, before he is guilty of their possession. Dickey v. State, 693 S.W.2d 386, 389
(Tex. Crim. App. 1984). Mere presence at the scene is not sufficient to establish unlawful
possession of a controlled substance. McGoldrick v. State, 682 S.W.2d 573, 578-79 (Tex. Crim.
App. 1985). Previously, if the defendant was not in sole possession of the premises where drugs
were found, the state had to "affirmatively link" the contraband to the defendant to establish his
possession. Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981). 
However, the continued viability of the affirmative links review appears to be in flux since the
Court of Criminal Appeals issued its opinion in Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App.
1991). 
      The Beaumont and Fort Worth Courts of Appeals have determined that Geesa, in rejecting
the use of the "reasonable hypothesis analysis" in circumstantial evidence cases, has implicitly
rejected the use of an affirmative links review. See Brown v. State, 878 S.W.2d 695, 699 (Tex.
App.—Fort Worth 1994, pet. granted); Eaglin v. State, 872 S.W.2d 332, 336-37 (Tex.
App.—Beaumont 1994, no pet.). Following the Beaumont Court, the Fort Worth Court held:
"[T]he sole standard of review to be applied when reviewing the sufficiency of the evidence is that
established in Jackson." Brown, 878 S.W.2d at 699.
      The Corpus Christi Court of Appeals has held that, although the reasonable hypothesis
standard is no longer applicable, the requirement of affirmative links persists in joint possession
cases. Villarreal v. State, 865 S.W.2d 501, 503 n.1 (Tex. App.—Corpus Christi 1993, pet. ref'd)
("We merely review the sufficiency of the evidence of those links under the pure Jackson
standard."). The Austin Court of Appeals has recently held that, although the affirmative links
analysis was developed within the reasonable hypothesis construct, its usefulness survives Geesa. 
Martinets v. State, 884 S.W.2d 185, 188 (Tex. App.—Austin 1994, no pet. h.). "In reviewing
the sufficiency of the evidence to establish an accused's knowledge of contraband and his control
over it, the existing body of law describing affirmative links between a defendant and contraband
is an appropriate means of applying the Jackson rationality standard of review." Id. 
      We agree with the Austin court that the affirmative links analysis is a convenient and logically
sound method of applying the Jackson standard to determine whether, after viewing the evidence
in the light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the possession of illicit drugs beyond a reasonable doubt. See id.; Jackson, 443 U.S.
at 318-19, 99 S.Ct. at 2788-89. Restated, the question here is: Could a rational trier of fact have
found beyond a reasonable doubt that Collins exercised care, custody, control, and management
over the cocaine, knowing it to be drugs? See Matson, 819 S.W.2d at 843; Dickey, 693 S.W.2d
at 389. 
      Courts have enumerated several factors to consider in determining possession: (1) the
defendant's presence when the search warrant was executed; (2) whether the contraband was in
plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the
defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed
other contraband when arrested; (6) whether the defendant made incriminating statements when
arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive
gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug
paraphernalia was present; (11) whether the defendant owned or had the right to possess the place
where the drugs were found; and (12) whether the place the drugs were found was enclosed. 
Villarreal, 865 S.W.2d at 503-04; see also Williams v. State, 859 S.W.2d 99, 101 (Tex.
App.—Houston [1st Dist.] 1993, no pet.). "The number of factors present is less important than
the logical force of those factors, alone or in combination, in establishing the elements of the
offense." Martinets, 884 S.W.2d at 188.
      Factors supporting the verdict are:
      •    Leonard was in the house when the search warrant was executed;
      •    the house was small, and both cocaine and heroin were found in one of the bedrooms;
      •    Leonard was living off and on in the house, and the electricity bill was in his name;
      •    needles and unidentified drug paraphernalia were found "all over" the house; and
      •    the narcotics were in plain view if one were standing inside the bedroom. 
      On the other hand, the evidence is uncontroverted that all of the narcotics found during the
search of the house were found in the bedroom where John Alvin was lying in bed. There was
no evidence that Leonard had been in that room, that he was under the influence of narcotics, that
he attempted flight, that he made furtive gestures, that he made incriminating statements, or that
he possessed any contraband on his person.
      Based on the relative logical force of these factors, we hold that the evidence is insufficient
to affirmatively link Collins to the cocaine. See id.; Villarreal, 865 S.W.2d at 504 (evidence held
to be insufficient under similar facts). We reverse the judgment and remand the case to the trial
court with instructions to enter a judgment of acquittal.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and acquittal ordered
Opinion delivered and filed December 14, 1994
Publish