# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00600-CR

**Jeffery Allen Jones, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. 3020664, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

On April 3, 2002, a fight broke out between two groups of men on Vargas Street. Seventeen-year-old John Hernandez was struck in the head multiple times with a metal fence post and died at the hospital. Appellant Jeffery Allen Jones was convicted of aggravated assault with a deadly weapon after a bench trial and sentenced to fifteen years imprisonment; the district court found him not guilty of murder. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2004). He appeals, contending that the evidence is legally and factually insufficient to support the district court's finding that he did not act in self-defense. We affirm the district court's judgment of conviction.

#### Factual Summary

Appellant, his three friends who were present at the fight, and two of Hernandez's friends all agreed that there was bad blood between Hernandez and appellant dating back to January 2001, when they got into a fight at school. Appellant won the fight, and very soon thereafter,

someone did a "drive-by" shooting at appellant's house while his mother and other family members were present. Appellant immediately suspected Hernandez, and appellant's brother testified that he saw Hernandez do the shooting, but the police never arrested Hernandez for the shooting.

Appellant and his three friends testified similarly about the events of April 3. The four men encountered Hernandez at a convenience store, where Hernandez insulted appellant and tried to hit him with his car as he left. Appellant jumped out of the way and kicked Hernandez's car as it went by. Appellant and his friends testified that they did not follow or attempt to find Hernandez, but they ended up on Vargas Street, where they saw Hernandez and his friends in front of a house. When Hernandez yelled insults at them, appellant and his friends stopped their car and approached. Appellant and his friends testified that Hernandez had a beer bottle in one hand and a pool stick in the other. Appellant accused Hernandez of doing the drive-by shooting, and Hernandez said he had done the shooting and would do it again, telling appellant he should warn his mother that she was going to die. Angered, appellant approached Hernandez, and one of appellant's friends handed him the fence post. Appellant testified that he told Hernandez to drop the stick and settle the dispute with a fistfight, but Hernandez refused. Ray Robledo, Hernandez's friend who was also holding a beer bottle, approached appellant, so appellant swung the fence post at him, hitting him in the head and knocking him to the ground. Appellant said that he saw a movement in the corner of his eye, so he reacted and swung at Hernandez. Appellant did not remember hitting Hernandez again, but acknowledged that he must have hit Hernandez more than once. Appellant's friends testified that when Robledo fell, Hernandez stumbled or fell backwards, dropping the beer bottle, and that appellant then hit Hernandez once in the head and at least one more time as he lay on the

2

ground. Appellant testified that he did not mean to kill Hernandez, and all of his friends agreed that appellant was very upset and scared after the fight. Appellant admitted that although he was concerned that Hernandez might be armed, he still approached Hernandez at the convenience store and on Vargas Street. One of appellant's friends testified that after Hernandez stumbled, appellant and his friends could have left rather than continuing the fight, another testified that appellant acted in self-defense, and all three testified that appellant became enraged when Hernandez mentioned the drive-by shooting.

Robledo testified that he, Hernandez, and two other friends were playing pool at a friend's house on Vargas Street on the night of the fight. Hernandez returned from the store agitated and saying someone had kicked his car. Shortly thereafter, Hernandez and his friends were confronted in front of the house by appellant and three other people. Robledo was drinking from a bottle of beer and another friend was holding a pool stick. The two groups started yelling about the drive-by shooting, and Robledo told appellant that Hernandez was not involved in the shooting. When he saw someone hand appellant the fence post, Robledo gave Hernandez part of a pool stick. Robledo said the next thing he knew, he was hit in the head and knocked unconscious. Robledo testified that he did not do anything to make appellant think he was going to attack and he did not hear Hernandez say he had done the drive-by shooting. Another of Hernandez's friends testified that Robledo said something to appellant, who swung the pipe and hit Robledo in the head, knocking him to the ground. Hernandez appeared shocked and was looking at Robledo when appellant struck him in the head, knocking him down and hitting him two or three times while he was on the ground.

3

A neighbor who saw the fight testified by affidavit[1] that appellant had a pole in his hands and that Robledo and Hernandez were empty-handed. Appellant accused Hernandez of doing a drive-by shooting, and Hernandez said he had done the shooting and was going to do it again. Appellant hit Robledo and then swung at Hernandez, who had not moved toward appellant, hitting him in the head. Hernandez fell, and appellant "walked over to him and hit [Hernandez] another 3 or 4 more time[s]." When Robledo moved toward Hernandez, appellant hit Robledo again before appellant's friend pulled him away. Appellant and his friends then ran off laughing.

**Standard of Review**

Generally, a person may use force to defend himself when and to the degree he reasonably believes force is immediately necessary to protect himself against another person's use or attempted use of unlawful force. Tex. Pen. Code Ann. § 9.31(a) (West 2003). A defendant raising the issue of self-defense has the burden of producing evidence to support the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)). The State then has the burden of persuasion to rebut the defense; the State does not have a burden of production of evidence. *Id*. A guilty verdict implicitly rejects a defendant's theory of self-defense. *Id*.; *Saxton*, 804 S.W.2d at 914. In evaluating the legal sufficiency of the evidence when a defendant claims self-defense, we view the evidence in the light most favorable to the prosecution and ask whether a rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the offense and (2) against the claim of self-defense. *Saxton*, 804 S.W.2d at 914. In reviewing the factual sufficiency of the evidence, we view all of the

---

[1] The parties stipulated to the admission of the neighbor's testimony by affidavit.

4

evidence in a neutral light and ask whether the State's evidence is too weak or the contrary evidence is too strong to rationally justify the jury's finding of guilt and implicit rejection of the self-defense claim beyond a reasonable doubt. *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). The trier of fact is the sole judge of the weight and credibility to be given a witness's testimony, *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000), and it is within the fact finder's province to accept or reject defensive evidence. *Saxton*, 804 S.W.2d at 914. The same standards of review are applied to verdicts reached following bench trials and jury verdicts. *Collins v. State*, 901 S.W.2d 503, 505 (Tex. App.—Waco 1994, pet. ref'd).

### Discussion

The drive-by shooting about which the witnesses testified occurred in January 2001 and the testimony demonstrates that appellant initiated this confrontation with Hernandez almost one and one-half years later. Appellant approached Hernandez at the convenience store and then, when appellant and his friends found themselves on Vargas Street, decided to stop their car, get out, and again approach Hernandez and his friends. There was conflicting evidence as to who was holding what potential weapon, but one of appellant's friends testified that, once Hernandez stumbled backwards, appellant and his friends could have left without further violence. Although appellant's friends testified that he was very upset after the fight, a disinterested witness testified that appellant and his friends were laughing as they ran from the scene. It was for the trial court, as trier of fact, to evaluate the credibility of the witnesses and resolve conflicts in the evidence. *Johnson*, 23 S.W.3d at 7; *Saxton*, 804 S.W.2d at 914. Even if Hernandez did acknowledge the drive-by shooting, it was appellant who initiated the confrontation, both at the convenience store and then on Vargas Street.

5

There was no testimony that Hernandez made an aggressive motion toward appellant, and most of the testimony shows it was appellant who took the first and, indeed, only violent actions. Appellant hit Robledo in the head before hitting Hernandez, and continued to strike Hernandez after he was on the ground. Appellant may not claim self-defense if he initiated and escalated the confrontation. *See* Tex. Pen. Code Ann. § 9.31(b)(1), (4) (use of force not justified in response to verbal provocation alone or if defendant provoked other's use of force and did not abandon or attempt to abandon encounter); *Smith v. State*, 965 S.W.2d 509, 512-13 (Tex. Crim. App. 1998) (defendant may not claim self-defense if he provokes attack seeking excuse to injure other party).

Appellant raised some evidence on the issue of self-defense, and the State then bore the burden of persuading the district court that appellant did not act in self defense. *Zuliani*, 97 S.W.3d at 594. We will not second-guess the district court's determination of witness credibility or its resolution of evidentiary conflicts. *Johnson*, 23 S.W.3d at 7; *Saxton*, 804 S.W.2d at 914. We hold that the State's evidence, both viewed in the light most favorable to the trial court's judgment and viewed neutrally, is sufficient to support a finding that appellant did not act in self-defense. We affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 31, 2004

Do Not Publish