Opinion filed January 10, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed January 10,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00294-CR

                                                       ________

 

                                      CHARLES
HEARN, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                        On
Appeal from the 142nd District Court

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR30251

 



 

                                                                   O
P I N I O N

 








Charles
Hearn appeals his conviction by the court upon his plea of not guilty to the
offense of felon in possession of body armor.  The court assessed his
punishment at twenty-five years in the Texas Department of Corrections,
Institutional Division.  In his brief, Hearn contends in four issues that the
evidence is legally insufficient to support his conviction; that he was denied
effective assistance of counsel for his counsel=s
failure to file a motion to suppress the legality of the stop and search of his
vehicle; that the State failed to prove by clear and convincing evidence that
he gave police consent to search his vehicle; and that his Sixth Amendment
right to trial by jury was violated when the trial court held a bench trial
after he had signed a waiver of trial by jury, pursuant to a plea agreement,
but later withdrew his plea.  In what he terms a supplement to the issue
relating to his Sixth Amendment right to trial by jury, he contends that he was
denied the effective assistance of counsel, with respect to his signing of the
jury waiver, because his counsel had a conflict of interest in that he
represented a potential witness in Hearn=s
trial.  We affirm.

Hearn
contends in issue one that the evidence is legally insufficient to sustain his
conviction for the offense of felon in possession of body armor.  In order to
determine if the evidence is legally sufficient, the appellate court reviews
all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319 (1979).  To prove the unlawful possession of contraband, the State
must prove that the accused exercised control, management, or care over the
contraband and knew that the matter possessed was contraband.  Poindexter v.
State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  When the accused is not
in exclusive possession of the place where the contraband is found, it cannot
be concluded that the accused had knowledge of and control over it unless there
are additional facts and circumstances that affirmatively link the accused to
the contraband.  Id. at 406.

As
noted by Hearn, in order to support his conviction for felon in possession of
body armor, the State was required to prove that he was previously convicted of
a felony and that he intentionally and knowingly possessed metal or body
armor.  Tex. Penal Code Ann. ' 46.041 (Vernon 2003); Hargrove
v. State, 211 S.W.3d 379, 385 (Tex. App.CSan
Antonio 2006, pet. ref=d),
cert. den=d, 
128 S.Ct. 134 (2007).  Hearn contends that the evidence is legally insufficient
because it fails to show that he intentionally and knowingly possessed metal or
body armor.  








Officer
Daniel Espinosa, who was with the gang unit of the Midland Police Department,
testified that, while he was on patrol with two other officers, he stopped a pickup
driven by Hearn when Hearn made an unsafe lane change.  He indicated that he
observed Officer Mike Hedrick, one of the other officers, seize a U.S. Marshal
bulletproof armor vest from the pickup.  He indicated that, the vest was found
in the extended cab behind the driver=s
seat.  He stressed that while there were some clothes and trash on it, it was
not completely covered up.  Officer Espinosa identified the vest as body
armor.  On cross-examination, Officer Espinosa acknowledged that any of the
three passengers in the pickup could have exercised care, custody, and control
of the body armor.

Officer
Hedrick testified that on the occasion in question he was also assigned to the
gang unit of the Midland Police Department.  He indicated that while on patrol
he saw the driver of an older model blue Ford pickup commit a traffic
violation.  He said that, after he made a traffic stop, he contacted the
driver, Hearn.  He stated that Hearn consented to a search of his pickup after
indicating there was nothing illegal inside it.  He testified that he found
blue body armor that had been underneath a milk crate.  Hearn denied that the
vest was his.  On cross-examination, Officer Hedrick acknowledged that the back
window was missing from the pickup.  He also acknowledged that the inside of
the pickup was Apretty
trashy.@  He related
that the vest could not be seen without disturbing the contents behind the
driver=s seat.  He
said he thought it was located right in the middle of the cab.

Christopher
Lloyd Sisson, one of the passengers in the pickup, testified that earlier he
had seen the vest in the possession of Cody Hearn, Hearn=s grandson.  He also indicated that he heard
Hearn say he wanted to get rid of it by taking it to the Salvation Army or
Goodwill.  While Sisson acknowledged that he had hard feelings against Hearn,
he insisted that he was not lying about what Hearn intended to do with the vest
just because he did not like him.  Sisson acknowledged that Cody told him he
had stolen the vest.  He said that Hearn told Cody to get rid of the vest
because somebody was going to prison over it.  He acknowledged that he did not
know how the vest got into the pickup, which was usually unlocked, and that he
did not see Hearn put the vest in the pickup.   Sisson also testified that on
the occasion in question he heard Hearn become irate with the officers, telling
them, AIt=s my [pickup].  If it=s in my [pickup], it must
be mine.@  Sisson
testified that Hearn told the officers to search his pickup.

Hearn
testified and denied that he had ever seen the vest or allowed anyone to put
one in his pickup.  He said he had cleaned out the pickup two hours before they
left.  He denied giving officers permission to search his pickup.  He
acknowledged that the pickup was his.  He insisted that Cody told him he had
put the vest in the pickup.  








Charlotte
McKinney, Hearn=s
daughter and the mother of Cody, testified that on September 30, 2004,
Cody came in with a bulletproof jacket or vest.   She indicated that, although
the jacket was in her car when Hearn arrived, she told him that the jacket was
gone.  She stated that later Sisson told her son, Cody, where the vest was and
that Cody went and got it out of the car.  She related that either she or Cody
gave it to Sisson, who took it away.  She said that she never saw it after
that.

 
Steven Gomez testified that he knew Cody and Sisson.  He said that, in the last
few days of September 2004, Cody and Sisson approached him to see if he wanted
to purchase a bulletproof vest.  He related that Hearn was not present and that
he never saw the vest again.  

An
audio recorder recorded the voices of Hearn and his son, Johnny Hearn, after
they were placed in a squad car.  At one point, Hearn is heard saying, AIt=s my [pickup].  It=s got to be mine.@  However, he also is heard blaming one of the
Akids@ in his family who drove
the pickup every day.  He indicated that no one wanted to do with the vest what
he wanted to do.  He acknowledged that a crate next to where the vest was found
was his.  We also note that, throughout the audio, Hearn was belligerent and
abusive toward both police and an animal control officer who was trying to
round up Hearn=s dog. 
The dog had been with Hearn in the pickup.

An
affirmative link can be established when the contraband is in plain view or
when it is hidden in a place tied to the accused.  Poindexter, 153
S.W.3d at 409 n.24.  As we have noted, Hearn was the owner and driver of the
pickup.  The contraband was accessible to and in close proximity to him.  It
was either in plain view or hidden with items admittedly belonging to Hearn. 
Hearn said that he told someone to put the vest in the pickup.  The State,
therefore, met its burden of establishing an affirmative link between Hearn and
the vest.  Because a rational trier of fact could have found beyond a
reasonable doubt that Hearn exercised care, custody, control, and management
over the contraband, the evidence is sufficient to support Hearn=s conviction.

In
urging that the evidence is insufficient, Hearn relies on several cases,
including United States v. Mills, 29 F.3d 545 (10th Cir. 1994); Kyte
v. State, 944 S.W.2d 29 (Tex. App.CTexarkana
1997, no pet.); Collins v. State, 901 S.W.2d 503, 504 (Tex. App.CWaco 1994, pet. ref=d); Garcia v. 
State, 790 S.W.2d 22 (Tex. App.CSan
Antonio 1990, pet. granted), permanently abated, 840 S.W.2d 957 (Tex.
Crim. App. 1992);  Guiton v. State, 679 S.W.2d 66 (Tex. App.CDallas 1984), aff=d, 742 S.W.2d 5 (Tex.
Crim. App. 1987); and Baltazar v. State, 638 S.W.2d 130 (Tex. App.CCorpus Christi 1982, no
pet.).








We
question the authority of two of those cases, Guiton and Baltazar,
because they were each decided using the analytical construct that a conviction
based on circumstantial evidence cannot be sustained if the circumstances do
not exclude every other reasonable hypothesis except the guilt of the
accused.   Guiton, 742 S.W.2d at 10; Baltazar, 638 S.W.2d at
132.  The Texas Court of Criminal Appeals abandoned the use of that analytical
construct in its opinion in Geesa v. State, 820 S.W.2d 154, 161 (Tex.
Crim. App. 1991).  In Garcia, the Texas Court of Criminal Appeals
reversed the judgment of the Fourth Court of Appeals, relied upon by Hearn,
before vacating both the court of appeals opinion and its own opinion due to
the death of Garcia.  Garcia, 840 S.W.2d at 958.  

We
find the remaining cases to be distinguishable.  In Collins, cocaine,
heroin, and drug paraphernalia were found in a bedroom where the defendant=s brother, John Alvin
Collins, was in bed.  Collins, 901 S.W.2d at 504.  Evidence showed that
the home was owned by a sister of the two Collins brothers.  Id. at
505.  Although the defendant in that case, Leonard Collins, was present at the
house when a search warrant was executed, there was no showing that he had been
in the bedroom where the drugs were found.  John testified that Leonard lived
at the residence Aoff
and on.@  Id. at
505.  John also testified that he had been a drug addict for thirty years and
that all the drugs were his.  Id.  In the case at bar, the evidence
showed that the pickup where the vest was found was Hearn=s pickup and that he owned
the crate found in the pickup next to the vest.  Further, there was no
testimony from anyone else asserting that he or she had placed the vest in the
pickup.  Although Hearn testified that Cody told him that he had put the vest
in the pickup, the jury was not required to accept his testimony as true.  

In
Kyte, the defendant had borrowed the car where contraband from her
ex-husband was found.  Kyte, 944 S.W.2d at 32.  The contraband was found
hidden under the carpet, and there was no visible lump in the carpet where the
contraband was found.  Id. As previously noted, in the case at bar,
Hearn owned the pickup where the vest was found, and it was located near other
property belonging to Hearn.        








          In Mills,
the defendant=s wife
testified that she placed contraband in a compartment in the  dining room table
at their residence without his knowledge and contrary to his instructions.  Mills,
29 F.3d at 550.  Again, as noted previously, in the case at bar, the jury was
not required to accept Hearn=s
testimony that Cody told him he had put the vest in the pickup.  No one else
testified that he or she had placed the vest in Hearn=s pickup without his knowledge, and there is
additional evidence linking Hearn to the vest.  We overrule issue one.  

Hearn
urges in issue two that he was denied the effective assistance of counsel
because his counsel failed to file a motion to suppress the legality of the
stop of his vehicle and the subsequent search.  In order to prevail on this
claim, Hearn must first establish that his counsel=s performance was deficient by showing that
his counsel=s
representation fell below the objective standard of professional norms.   Strickland
v. Washington, 466 U.S. 668, 687 (1984); Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002).  Second, he must show that this deficient
performance prejudiced his defense by showing that the error was so serious as
to deprive him of a fair trial, a trial whose result is reliable.  Strickland,
466 U.S. at 687.  This means that Hearn must show a reasonable probability
that, but for his counsel=s
unprofessional errors, the result of the proceeding would have been different. 
Bone, 77 S.W.3d at 833.  A reasonable probability is one sufficient to
undermine confidence in the outcome.  Strickland, 466 U.S. at 687.  

Appellate
review of defense counsel=s
representation is highly deferential and presumes that counsel=s actions fell within the
wide range of reasonable and professional assistance.  Bone, 77 S.W.3d
at 833.  Under normal circumstances, the record on direct appeal will not be
sufficient to show that counsel=s
representation was so deficient and so lacking in tactical or strategic
decision making as to overcome the presumption that counsel=s conduct was reasonable
and professional.  Id.  In the case at bar, there is no evidence as to
counsel=s strategy
with respect to not filing a motion to suppress or objecting to evidence
regarding the legality of Hearn=s
traffic stop.  Consequently, we conclude that the record in this appeal is
inadequate to support Hearn=s
contention.  We are unwilling to assume, as we are urged to do by Hearn, that
there could have been no reasonable trial strategy.  We overrule issue two.  








Hearn
asserts in issue three that the trial court erred by admitting evidence of the
vest found in the search because the evidence did not show by clear and
convincing evidence that Hearn gave police consent to search his vehicle. 
Hearn had a running objection at trial to the fruits of the search of his
vehicle on the basis that he did not consent to the search.  As previously
noted, Officer Hedrick and Sisson both testified that Hearn consented to the
search of his pickup, while Hearn denied giving his consent. The audio tape
made while Hearn was sitting in the squad car includes a statement that could
reasonably be interpreted as a statement by Hearn that he would not have
consented to the search had he known the vest was there.  As noted by Hearn,
this court, with respect to search and seizure issues, is to give almost total
deference to a trial court=s
rulings on questions of historical fact and application of law to fact
questions that turn on an evaluation of credibility and demeanor.  See
Johnson v. State, 68 S.W.3d 644, 652 (Tex. Crim. App. 2002).   In this
case, the trial court=s
admission of evidence that the vest was found in the search turned on the trial
court=s evaluation of
credibility and demeanor.  Giving deference to the trial court=s evaluation, we determine
that the trial court did not abuse its discretion by admitting evidence that
officers found the vest during the search of Hearn=s vehicle because there is clear and
convincing evidence that Hearn consented to the search of his vehicle.  

Hearn=s
objection at trial was that there was no consent, not that the search was
conducted without a warrant or that consent was given involuntarily.  We hold
that the trial court, from the evidence presented, could reasonably have
determined that Hearn consented to the search and that his consent was
voluntary.  One of the cases upon which Hearn relies is In re R.J., No.
12-03-00380-CV,  2004 WL 2422954 (Tex. App.CTyler,
October 29, 2004, no pet.) (memo. op.).  In that case, the court held that the
trial court abused its discretion in denying R.J.=s
motion to suppress evidence of his possession of marihuana where the defendant
was sixteen, had no prior experience with law enforcement, and was unfamiliar
with his Fourth Amendment Rights.  Id.  Other bases for the court=s opinion that R.J.=s consent to search was
involuntary included the fact that the officer seeking to search R.J.=s vehicle, after R.J. had
refused to give consent to search, implicitly represented to the defendant that
a canine sweep was inevitable, that the defendant could not refuse to permit
the sweep, and that the defendant was not free to leave prior to the completion
of such a sweep.  Id.  The court held that the fact that the officer did
not have the reasonable suspicion necessary to detain the defendant to conduct
a canine sweep but conveyed the opposite message and that the fact that the
defendant consented to the search, despite his prior refusal, immediately after
this message was conveyed were factors indicating that the defendant=s consent to the search was
involuntary.  Id.  








In
the case at bar, Hearn was a much older adult with a great deal of experience
in dealing with law enforcement.  He was a convicted felon who was on parole at
the time of the search.  Hearn, rather than acknowledging he gave consent and
that it was involuntary, denied having consented at all.  His statement that he
would not have consented to the search had he known the vest was in his pickup is
indicative of the fact that he was aware of his right to refuse his consent to
search.  There is no indication that the officer conducting the search made any
representation to Hearn falsely suggesting to him that a search was inevitable
should Hearn refuse.  Finally, the only evidence that Hearn refused his consent
is his own testimony at trial, to which the trial court was not required to
give credence.  

Hearn
also relies upon the case of Grimaldo v. State, 223 S.W.3d 429 (Tex.
App.CAmarillo 2006, no
pet.).  In that case, the court held that the trial court abused its discretion
in denying the defendant=s
motion to suppress where the defendant=s
consent to search was obtained after officers had already entered the premises
illegally, run through the house with guns drawn, and seized those present,
including the defendant, without illegal justification, where there was no
sufficient attenuation between the unlawful seizure and the consent given by
the defendant.  Id. at 435.  The court said that, under those
circumstances, it did not matter whether the defendant=s consent was voluntary.  Id. Apparently,
the basis for the defendant=s
motion to suppress in Grimaldo was that the officers conducted the
search without a warrant or exigent circumstances and that the consent to
search was either involuntary or not sufficiently attenuated from the unlawful
entry.  In the case at bar, Hearn made none of the objections presented by
Grimaldo and only objected on the basis that he had not given his consent.  

            Finally,
Hearn relies upon the case of State v. Hunter, 102 S.W.3d 306 (Tex. App.CFort Worth 2003, no pet.). 
In Hunter, the defendant presented a motion to suppress with respect to
items found in a search of his vehicle after he had given his consent,
challenging the warrantless search of his vehicle under various amendments to
the United States and Texas Constitutions.  Id. at 311.  The court
inferred, without indicating directly, that the defendant was young and
immature.  Id. at 312.  When the police officer stopped the defendant,
the officer blocked the defendant=s
car so that the defendant was not free to leave.  Id.   The officer did
not give the defendant any constitutional advice and did not tell him that he
was free to leave or that he was free to decline to consent to the search.  Id.
 There was no evidence of repetitive or lengthy questioning or the use of
physical punishment to force consent.  Id.  The court held that the
trial court did not abuse its discretion by granting the defendant=s motion to suppress,
apparently holding that the State failed to establish the voluntariness of the
defendant=s consent by
clear and convincing evidence.  Id.  As we have noted, the only
objection offered in the case at bar is that of lack of consent.  Hearn
contends on appeal that his consent was obtained as the fruit of an illegal
stop.  He presented no such objection at trial.  Consequently, with respect to
that contention, nothing is presented for review.  Tex. R. App. P. 33.1(a).  We overrule issue three.








Hearn
asserts in issue four that the trial court erred when it tried him without a
jury.  In view of a plea bargain that he later rejected, Hearn signed a waiver
of his right to trial by jury.  He thereafter determined not to enter a guilty
plea in accordance with the plea bargain.  At a subsequent trial before the
court upon his plea of not guilty, Hearn presented no objection to being tried
without a jury.  Consequently, nothing is presented for review.  Rule 33.1(a). 


Hearn
relies upon the case of Wilson v. State, 698 S.W.2d 145 (Tex. Crim. App.
1985).  In that case, the defendant waived his right to trial by a jury so that
he could plead nolo contendere before a criminal court magistrate.  Id. at
145.  When he appeared before the criminal district court for the assessment of
punishment, the trial judge, noting that the presentence report showed that the
defendant denied committing the offense, refused to accept the defendant=s plea, saying that the
alternative was Ato
put twelve people in the jury box and they get to decide.@  Id. at 146. 
Later, the trial was held before the court over the objection of the
defendant.  Id.  The court held that, under those facts, the defendant=s jury waiver was revoked,
noting that it was very clear that the court had intended to return the
defendant to the same status as that prior to his plea.  Id. at 147. 
Consequently, the trial court erred in denying the defendant his right to a
jury trial.  Id. at 146-47.  The court noted that the court of appeals,
which had previously issued an opinion in the case, was wrong in presuming that
a change of a plea to not guilty revokes a prior jury waiver.  Id. at
146.

In
the case at bar, Hearn, unlike Wilson, made no pretrial objection to
being tried before the court without a jury.  As noted in Wilson, Hearn=s withdrawal of his plea of
guilty did not have the effect of revoking his waiver of trial by jury.  Also,
there is nothing in the record here showing the trial court=s intent to put Hearn back
where he was before he signed the waiver.  We find that the opinion in Wilson
is consistent with and supports our opinion.  








In
an instrument entitled ASupplement
to Appellant=s Point
of Error Number Four,@
Hearn contends that he was denied the effective assistance of counsel because
the counsel representing him at the time he signed the waiver of jury trial had
a conflict of interest.  Hearn signed the waiver of jury trial on November 10,
2005.  On February 2, 2006, Robert R. Sykes, Hearn=s attorney, filed a motion to withdraw as
Hearn=s attorney,
noting that there was a possible conflict of interest should Hearn call another
of his clients as a witness, because it might expose that client to additional
prosecution.  The trial court granted the motion, noting that it was doing so
to avoid any conflict between the attorney and Hearn.  Hearn asserts that these
filings make it apparent that an actual conflict existed.  The record only
shows the potential of a conflict of interest in the event that Hearn sought to
call another client of the attorney as a witness.  Hearn does not direct us to
any portion of the record reflecting that his attorney was representing the
potential witness at the time he signed the waiver of his right to trial by
jury.  

The
mere possibility of a conflict of interest is insufficient to impugn a criminal
conviction.  Pina v. State, 29 S.W.3d 315, 317 (Tex. App.CEl Paso 2000, pet. ref=d).  Hearn also relies on Pina.
 We find Pina to be distinguishable because in Pina the
record reflected that there was an actual conflict that existed during the
defendant=s trial that
affected his conduct of the defense.  Hearn has made no such showing in this
case.  We overrule issue four, including the issue presented in Hearn=s Supplement to Appellant=s Point of Error No. 4.  

The
judgment is affirmed.

 

                                                                                  
PER CURIAM

January 10, 2008

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.